8/17/2021 5:45 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 56401473
By: Wanda Chambers
Filed: 8/17/2021 5:45 PM

No. _____

| | | |
|---|---|---|
| BRUCE COUCH, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | | HARRIS COUNTY, TEXAS |
| | § | |
| THE KROGER CO. | § | ____ JUDICIAL DISTRICT |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, BRUCE COUCH, (hereinafter referred to as "Plaintiff") and files this Original Petition complaining of THE KROGER CO. (hereinafter referred to as "KROGER" and/or "Defendant"), and for cause of action would respectfully show unto the Court as follows:

### I.    DISCOVERY PLAN

1.    Plaintiff intends to conduct discovery under Discovery Level 2, pursuant to Rule 190.3 of Texas Rules of Civil Procedure.

### II.    PARTIES

2.    Plaintiff, BRUCE COUCH, is an individual residing in Harris County, Texas.

3.    Defendant, KROGER CO., is an Ohio corporation whose place of business is located at 1014 Vine Street, Cincinnati, Hamilton County, Ohio, 45202. Service of process upon Defendant may be had by serving its Registered Agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company _Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218 USA or where otherwise found. *Service on Defendant is hereby*

1

**EXHIBIT A**

*requested at this time.*

### III.    JURISDICTION & VENUE

4.       This Honorable Court has subject matter jurisdiction over this lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements. This Court has jurisdiction over the parties who are citizens of the State of Texas and/or entities which conduct substantial business within the State of Texas.

5.       Venue is proper in Harris County, Texas under Texas Civil Practice & Remedies Code section 15.002(a)(1) because Harris County is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

### IV.    BACKGROUND FACTS

6.       On or about September 24, 2019, he entered Kroger to shop for some needed personal items.  The Krogers that he was shopping at was located at 1801 S. Voss Rd., Houston, Texas 77057, Houston, Harris County, Texas.

7.       As he shopped within the premises of Kroger, he turned and proceeded walking toward aisle five of the store.

8.       Mr. Couch noticed that the linoleum tile floor near aisle five appeared to be "shiny" and there were no "caution" or "wet floor" signs in the surrounding area.

9.       While Mr. Couch was walking on aisle five, he suddenly slipped on a slippery substance located on the floor. The slippery substance on the floor caused him to quickly lose his balance and fall down hard on his left side, violently impacting his left knee, hip, shoulder, and right wrist. The impact of the fall caused him to lose control of the shopping cart that he was carrying his right hand.

10.       When Mr. Couch was finally able to regain his balance and rise from the slippery

2

**EXHIBIT A**

floor, he approached an employee of Kroger. He informed the employee that there was a slippery substance on the floor of aisle five which had caused him to slip and fall. Mr. Couch also requested and waited to speak to the manager of the Kroger, but the Manager was unavailable.

11.     Mr. Couch stated that he was approached by a Kroger Shift Supervisor instead who explained that they had just recently instructed an employee to mop the surface of aisle five with a cleaning solution. Furthermore, the Kroger Shift Supervisor stated that the employee followed the directive and mopped the floor with the prescribed cleaning solution, which caused the surface to be slippery.

12.     The Kroger Shift Supervisor apologized to Mr. Couch for having suffered a fall and injuries within the Kroger store and for not having placed wet floor signs in the surrounding area.

13.     The Kroger Shift Supervisor then immediately instructed multiple employees to place multiple "wet floor" signs on aisle five where Mr. Couch had fallen.

14.     Mr. Couch alleges that the Kroger Shift Supervisor did not document his statement or complete an incident log in Plaintiff's presence.

15.     Mr. Couch was taken to St. Luke Hospital the following day for medical treatment of his injuries. He has had several months of physical therapy and interventional pain management resulting from his injuries.

## V.     CAUSES OF ACTION

## NEGLIGENCE and GROSS NEGLIGENCE

16.     At all times mentioned herein, Defendant, Defendant's agents, servants, and employees who were acting in the scope of their employment, were guilty of negligent and/or

**EXHIBIT A**

grossly negligent conduct toward the Plaintiff in:

a. In creating the unreasonably dangerous condition through its agents or employees by having a slippery substance or cleaning solution in an area open to invitees;

b. Failing to inspect and properly maintain a known dangerous area open to invitees on its premises in a timely manner;

c. Failing to give adequate and understandable warnings to Plaintiff of the unsafe condition of the flooring area;

17.     Each of the foregoing negligent or grossly negligent acts or omissions, whether taken singularly or in any combination, was a proximate cause of Plaintiff's injuries and damages.

## PREMISES LIABILITY

18.     Plaintiff hereby incorporates the preceding paragraphs as if fully set forth herein.

19.     Mr. Couch was on Defendant's premises for the purpose of purchasing various items, therefore he was an invitee at all times of the incident.

20.     At all times mentioned herein, Defendant owned and controlled the premises of The Kroger Store. Furthermore, Defendant owed certain duties to Mr. Couch, the breach of which proximately caused the injuries set forth herein.

21.     Defendant's agents, servants, and employees negligently created an unreasonable risk of harm to its business patrons in permitting the floor to become slick due to the application of the cleaning solution, negligent or willfully allowing such condition to continue, and negligently or willfully failing to warn Mr. Couch of the condition on the floor.

22.     This dangerous condition existed despite the fact that Defendant or Defendant's agents knew or should have known of the existence of the aforementioned condition and that

4

**EXHIBIT A**

there was a reasonable likelihood of a person being injured.

23.       Furthermore, Defendant had a duty to use ordinary care to ensure that the premises did not present a danger to Plaintiff. This duty includes the duty to inspect and the duty to warn or to correct the defect. Defendant breached this duty by failing to inspect for, warn of, or remedy the liquid cleaning solution on the floor.

24.       Defendant's breach of these duties proximately caused Mr. Couch's injuries and damages.

## VI. PLAINTIFF'S INJURIES

25.       Mr. Couch suffered and was treated for injuries including moderate neck pain and stiffness, radiating shoulder spasms throughout his groin, "throbbing" headaches, "achy" lumbar (low back) pain, pelvic/hip pain and stiffness, right wrist/forearm sprain and weakness, radiating abdominal pain and muscle spasms, left hip contusions and stiffness, and radiating left thigh pain.

26.       In all reasonable probability, these injuries will continue to cause Mr. Couch to suffer the ill-effects of this deterioration throughout his body in the future, if not for the balance of his natural life.

## VII. MENTAL ANGUISH

27.       Mr. Couch suffers from mental anguish and anxiety because of this incident and is constantly replaying the events of his fall in his mind. He is often anxious and nervous while shopping in department stores and finds himself excessively bracing for impact when he sees someone mopping the floor that he is walking on.

28.       He is constantly "overthinking" and coping with anxiety, stress, and fear due to the injuries that he has sustained. He now has a general distrust of store employees with whom he now comes into contact and does not believe that they have his best interest in mind.

5

**EXHIBIT A**

29.      He is unable to sleep well due to a recurrent nightmare of the incident (at least 3 times a week). The dream involves vivid images of him violently slamming against the floor and dropping all of his belongings.

30.      He often wakes up from this recurring dream drenched in perspiration. He can feel his pulse throbbing in his ears and his heart beating out of his chest as if he were actually being struck.

31.      Mr. Couch is sometimes tired during the day due to a lack of restful sleep. He alleges that his stress and anxiety from the incident has manifested into recurrent episodes of overwhelming panic, including pounding heart rate, shortness of breath, heavy perspiration, headaches, and fatigue. These episodes make his day-to-day regimen even more difficult and stressful.

## VIII. CLAIMS FOR RELIEF

32.      Pursuant to Texas Rule of Civil Procedure 47(c)(4) Plaintiff seeks monetary relief over $200,000.00 but not more than $1,000,000.00, including damages of any kind, penalties, costs, expenses, prejudgment interests, attorneys' fees, and lost wages.

## VIII. DAMAGES

33.      As a direct and proximate result of the conduct of Defendant, Mr. Couch suffered severe and permanent physical and mental injury. Because of the actions of the Defendant, Plaintiff sustained injuries and incurred the following damages:

a.  Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff for the necessary care and treatment of the injuries resulting from the accident complained of herein and such charges are reasonable and were usual and customary charges for such services in Harris County, Texas;

b.  Reasonable and necessary medical care and expenses which will in all reasonable

6

**EXHIBIT A**

probability be incurred in the future;

c.  Physical pain and suffering in the past, present, and future;

d.  Physical impairment in the past and the future; and

e.  Loss of earnings in the past, present, and future

## IX. EXEMPLARY DAMAGES

34.     Defendant's acts or omissions described above, when viewed from the standpoint of the Defendant at the time of the act or omission, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Mr. Couch.

35.     Defendant had actual, subjective awareness of the risk involved in the above-described acts or omissions, but proceeded with conscious indifference to the rights, safety, or welfare of Mr. Couch and others.

36.     Based on the facts stated herein, Mr. Couch requests exemplary damages be awarded from the Defendant in this case.

## X. PREJUDGMENT AND POSTJUDGMENT INTEREST

37.     Mr. Couch seeks prejudgment and post judgment interest as allowed by law.

## PRAYER

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays that the Defendant be served with this Original Petition in the manner prescribed by law, be cited to appear and to answer herein, and that upon final hearing, this Court enter judgment in favor of Plaintiff and against Defendant in an amount in excess of the minimum jurisdictional limits of this Court, together with prejudgment and post judgment interest as allowed by law, and for such other relief to which Plaintiff is entitled.

**EXHIBIT A**

Respectfully submitted,

**LAW OFFICES OF ANDRE' L. LIGON, P.C.**

/s/ *Andre' L. Ligon*_____
Andre' L. Ligon
Texas Bar No. 00797840
1001 Texas Avenue, Suite 570
Houston, Texas 77002
(713) 662-2500 (Telephone)
(713) 222-0252 (Facsimile)
andre@andreligon.com
**ATTORNEYS FOR PLAINTIFF**

8

**EXHIBIT A**